# SIOUX RÉMEDY COMPANY *v.* COPE.

## ERROR TO THE CIRCUIT COURT OF TURNER COUNTY, STATE OF SOUTH DAKOTA.

No. 37. Submitted March 13, 1914.—Decided November 30, 1914.

When the writ of error from this court is not allowed until after the record has been sent back by the state appellate court to the trial court, the writ is directed to that court.

It is within the province of the highest court of a State in construing a state statute to depart from prior decisions upon the subject if deemed untenable and in such event this court upon a writ of error to that court accepts the latest construction and confines its attention to determining whether the statute, as so construed, violates the Federal Constitution.

While a State may adopt a reasonable police measure, even though interstate commerce be incidentally or indirectly affected, it has no power to exclude from its limits foreign corporations or others engaged in interstate commerce or to impose such conditions as will fetter their right to carry on such commerce, or subject them in respect to their transactions therein to unreasonable requirements.

The right to demand and enforce payment for goods sold in interstate commerce is directly connected with, and essential to, such commerce, and the imposition of unreasonable conditions on such right operates as a burden and restraint upon interstate commerce.

While a State may restrict the right of foreign corporations to sue in its courts and to engage in business within its limits, its power in this respect, like all other state powers, can only be exerted within the limitations placed on state action by the Federal Constitution.

A corporation, authorized by the State of its creation to engage in interstate commerce, may not be prevented from coming into the limits of another State for all legitimate purposes of such commerce.

A State may require a foreign corporation seeking to enforce rights in its courts to conform to prevailing modes of procedure and usual rules respecting costs, security therefor and the like, but it may not impose conditions such as filing its certificate, paying recording fees and appointing a resident agent which have no bearing on mere questions of

procedure or costs.  Such conditions by their necessary operations
are burdens on interstate commerce.

A requirement that a foreign corporation appoint a resident agent on
whom process may be served in an action against it, as a condition
precedent to suing in the courts of the State to collect a claim arising
out of interstate commerce transactions, is a burden on interstate
commerce because it necessarily operates to thwart the purpose of
the Constitution to secure and maintain the freedom of such com-
merce by whomsoever conducted.

The South Dakota statute, §§ 883–885, Rev. Codes 1903, as the same
has been construed by the state courts, requiring foreign corporations
before bringing suit on claims arising in interstate commerce in the
courts of the State, to file certificate of incorporation and other papers
and pay recording fees and also to appoint resident agents on whom
process can be served, is an unconstitutional burden on interstate
commerce.

THE facts, which involve the constitutionality under
the commerce clause of the Federal Constitution of a
statute of South Dakota regarding the right of foreign cor-
porations to sue in the courts of the State and prescribing
conditions to be performed in regard thereto, are stated in
the opinion.

*Mr. Joe Kirby, Mr. C. E. Moore* and *Mr. A. W. Bulkley*
for plaintiff in error.

*Mr. Charles O. Bailey, Mr. John H. Voorhees, Mr. Alan
Bogue, Jr., Mr. Andrew S. Bogue, Mr. Peter G. Honegger*
and *Mr. Theodore M. Bailey* for defendants in error:

The statute is constitutional though it may affect inter-
state commerce.  *Allen* v. *Alleghany Company,* 196 U. S.
458; *Ashley* v. *Ryan,* 153 U. S. 436; *Blake* v. *McClung,* 172
U. S. 239; *Chambers* v. *Balt. & Ohio R. R.,* 207 U. S. 142;
*Mobile County* v. *Kimball,* 102 U. S. 691; *Lupton's Sons*
v. *Automobile Club,* 225 U. S. 489; *Diamond Glue Co.* v.
*U. S. Glue Co.,* 187 U. S. 611; *Flint & Walling Company* v.
*McDonald,* 21 S. Dak. 526; *Hall* v. *DeCuir,* 95 U. S. 485;
*Hooper* v. *California,* 155 U. S. 648; *Johnson* v. *New York*

*Breweries Co., Ltd.,* 178 Fed. Rep. 513; *Mahar* v. *Harring-ton Park,* 204 N. Y. 231; *N. Y. Life Ins. Co.* v. *Deer Lodge County,* 231 U. S. 495; *State Tax on Railway Gross Receipts,* 15 Wall. 284; *U. S. Fidelity Co.* v. *Kentucky,* 231 U. S. 394.

The following cases cited by plaintiff in error can be distinguished: *Atchison &c. Railway Co.* v. *O'Connor,* 223 U. S. 280; *Buck Stove Co.* v. *Vickers,* 226 U. S. 205; *Cald-well* v. *North Carolina,* 187 U. S. 622; *International Text-book Co.* v. *Lynch,* 218 U. S. 664; *Same* v. *Peterson,* 218 U. S. 664; *Same* v. *Pigg,* 217 U. S. 91; *Ludwig* v. *West. Un. Tel. Co.,* 216 U. S. 146; *Pullman Co.* v. *Kansas,* 216 U. S. 56; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *Schollen-berger* v. *Pennsylvania,* 171 U. S. 1; *Southern R. Co.* v. *Greene,* 216 U. S. 400; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1; *Wilson-Moline Buggy Co.* v. *Hawkins,* 223 U. S. 713.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is an action by an Iowa corporation to enforce payment of the purchase price, amounting to $80, of merchandise sold in interstate commerce under a written contract which was made in South Dakota and required that the merchandise be shipped by the plaintiff from its place of business in Iowa to the defendants at their place of business and residence in South Dakota. The action was brought in a court of the latter State and the defend-ants interposed a plea to the effect that the action could not be maintained because, as was the fact, the plaintiff had not complied with a South Dakota statute prescribing conditions upon which corporations of other States would be permitted to sue in the courts of that State. The plea was sustained and the action dismissed. An appeal to the Supreme Court of the State resulted in a judgment of

affirmance,[1] from which one member of the court dissented.  28 S. Dak. 397.

In that court it was contended that the statute upon which the plea was grounded is, when applied in a case like this, repugnant to the commerce clause of the Constitution of the United States.

The statute (Rev. Codes 1903) declares (§ 883) that no corporation created under the laws of any other State or Territory, for other than religious and charitable purposes, "shall transact any business within this State, or acquire, hold and dispose of property, real, personal or mixed, within this State, or sue or maintain any action at law or otherwise, in any of the courts of this State," until it shall have filed in the office of the Secretary of State an authenticated copy of its charter or articles of incorporation, and also (§ 885) that "no action shall be commenced or maintained in any of the courts of this State by such corporation on any contract, agreement or transaction made or entered into in this State, by such corporation," unless it shall have appointed a resident agent upon whom process may be served in any action to which it may be a party and shall have filed an authenticated copy of such appointment in the office of the Secretary of State and of the register of deeds of the county where the agent resides.  The corporation is also required to pay the fees, amounting to about $25, for filing and recording these instruments.

The Supreme Court of the State construed the statute as requiring a foreign corporation to subject itself to the jurisdiction of all the courts of the State as a condition to invoking the aid of any one of them, and as embracing

---

[1] At the time of the allowance of the present writ of error the record had been sent to the Circuit Court of Turner County, and so the writ was directed to that court.  See *Gelston* v. *Hoyt*, 3 Wheat. 246, 304; *Atherton* v. *Fowler*, 91 U. S. 143, 146–149; *Polleys* v. *Black River Co.*, 113 U. S. 81; *Lee* v. *Johnson*, 116 U. S. 48.

actions to enforce contracts directly arising out of and connected with interstate commerce equally with actions having no relation to such commerce; and after so construing the statute, the court held it to be a reasonable exercise of the police power of the State and in no wise repugnant to the commerce clause of the Constitution of the United States. In two earlier cases the court had taken a different view of the statute (*Rex Buggy Co.* v. *Dinneen,* 23 S. Dak. 474; *Sioux Remedy Co.* v. *Lindgren,* 27 S. Dak. 123), but in the opinion rendered in this case they were disapproved.

Recognizing that it was within the province of the Supreme Court of the State to construe the statute and to depart from prior decisions upon the subject, if deemed untenable, we accept the construction applied in this case, and confine our attention to the Federal question, whether, as so construed, the statute, by its necessary operation materially or directly burdens interstate commerce.

Through a long series of decisions dealing with the scope and effect of the commerce clause it has come to be well settled that a State, while possessing power to adopt reasonable measures to promote and protect the health, safety, morals and welfare of its people, even though interstate commerce be incidentally or indirectly affected, has no power to exclude from its limits foreign corporations or others engaged in interstate commerce, or by the imposition of conditions to fetter their right to carry on such commerce, or to subject them in respect to their transactions therein to requirements which are unreasonable or pass beyond the bounds of suitable local protection. *Crutcher* v. *Kentucky,* 141 U. S. 47; *Minnesota Rate Cases,* 230 U. S. 352, 401, 402, 410, and cases cited; *Adams Express Co.* v. *New York,* 232 U. S. 14, 31, and cases cited. And so the solution of the question here presented lies within narrow lines.

The contract and sale out of which the action arose

were transactions in interstate commerce, and entirely legitimate notwithstanding the plaintiff's non-compliance with the state statute. *International Text Book Co.* v. *Pigg*, 217 U. S. 91; *Bucks Stove Co.* v. *Vickers*, 226 U. S. 205; *Flint & Walling Mfg. Co.* v. *McDonald*, 21 S. Dak. 526. After delivery of the merchandise according to the contract, the plaintiff was lawfully entitled to the purchase price. The defendants were likewise obligated to pay it. And by reason of their refusal the plaintiff had a right of action on the contract. Thus much was recognized by the Supreme Court of the State and is now conceded by counsel for the defendants. But it was held by that court, and is here contended, that while the State could not make non-compliance with the statute a ground for forbidding or invalidating sales in interstate commerce, it could make such non-compliance a ground for preventing the maintenance of any action in the courts of the State based upon such a sale; in other words, that the State, although unable to condition the right to make the sale or its validity upon a compliance with the statute, could so condition the right to sue for the purchase price in the courts of the State.

The argument advanced in support of this position is, first, that the right to demand and enforce payment for merchandise sold in interstate commerce is no part of such commerce, and therefore may be encumbered without burdening the latter; second, that a State may impose such conditions as it deems appropriate upon the right of foreign corporations to sue in its courts, and, third, that in any event the conditions imposed by the statute are not unreasonable or burdensome. The Supreme Court of the State sustained the second and third points and passed the other without comment.

Of the first point it is enough to say that the right to demand and enforce payment for goods sold in interstate commerce, if not a part of such commerce, is so directly

connected with it and is so essential to its existence and continuance that the imposition of unreasonable conditions upon this right must necessarily operate as a restraint or burden upon interstate commerce. The form or mode of imposing the conditions is not nearly so important as their necessary and practical operation, for, as was said in *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 27: "If the statute, reasonably interpreted, either directly or by its necessary operation, burdens interstate commerce, it must be adjudged to be invalid, whatever may have been the purpose for which it was enacted, and although the company may do both interstate and local business. This court has repeatedly adjudged that in all such matters the judiciary will not regard mere forms, but will look through forms to the substance of things."

It may be conceded in a general way that a State may restrict the right of a foreign corporation to sue in its courts. *Bank of Augusta* v. *Earle*, 13 Pet. 519, 589–591; *Anglo American Provision Co.* v. *Davis Provision Co.*, 191 U. S. 373. And in the same general way it may be conceded that a State may restrict the right of such corporations to engage in business within its limits. *Paul* v. *Virginia*, 8 Wall. 168; *Hooper* v. *California*, 155 U. S. 648. But the power so to deal with these subjects, like all other state powers, can only be exerted within the limitations which the Constitution of the United States places upon state action. *Missouri* v. *Lewis*, 101 U. S. 22, 30; *Blake* v. *McClung*, 172 U. S. 239, 256; *Chambers* v. *Baltimore & Ohio R. R. Co.*, 207 U. S. 142, 148; *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 33; *Southern Railway Co.* v. *Greene*, 216 U. S. 400, 413. One of these limitations is that before indicated arising from the commerce clause, whose operation, as this court has said, is such that a corporation authorized by the State of its creation to engage in interstate commerce "may not be prevented by another State from coming into its limits for all the legitimate

purposes of such commerce." *Western Union Telegraph Co.* v. *Kansas*, 216 U. S. 1, 27. We think that when a corporation goes into a State other than that of its origin to collect, according to the usual or prevailing methods, the purchase price of merchandise which it has lawfully sold therein in interstate commerce, it is there for a legitimate purpose of such commerce, and that the State cannot, consistently with the limitation arising from the commerce clause, obstruct or hamper the attainment of that purpose. If it were otherwise, the purpose of the Constitution to secure and maintain the freedom of commerce by whomsoever conducted could be largely thwarted by the States and the commerce itself seriously crippled.

We are thus brought to the question whether the particular conditions imposed by this statute can be sustained when applied to rights of action like that disclosed in the present case. Without doubt a foreign corporation seeking to enforce such a right in the courts of a State may be required to conform to the prevailing modes of proceeding in those courts and to submit to the usual rules respecting costs, the giving of security therefor (see *Blake* v. *McClung*, 172 U. S. 239, 256), and the like. But incidents of this character commonly attending litigation may be put out of view, for it is with something quite different that we are here concerned. The conditions which the statute imposes are: First, that the company shall file in the office of the Secretary of State an authenticated copy of its charter or articles of incorporation; second, that it shall appoint a resident agent upon whom process may be served in any action against it and shall file a copy of such appointment in the office of the Secretary of State and of the register of deeds of the county where the agent resides; and, third, that it shall pay the fees incident to filing and recording these instruments, approximating $25. It will be perceived that these are the conditions upon which many of the States permit foreign corporations to engage in busi-

ness within their limits when no constitutional limitation is involved, that is, when the character of the business is such that the State is free to exclude such corporations or to admit them upon terms acceptable to it. But here the conditions are sought to be applied in a different way and to a different situation falling within the reach of the commerce clause. Out of this arises the question of their validity. We think the mere statement of the conditions shows that they have no natural or reasonable relation to the right to sue which they are intended to restrict. They have no bearing upon the merits or any question of procedure or costs, are not directed against any abusive use of judicial process, and are plainly onerous. The second one, respecting the appointment of a resident agent upon whom process may be served, is particularly burdensome, because, as the Supreme Court of the State has said, it requires the corporation to subject itself to the jurisdiction of the courts of the State in general as a prerequisite to suing in any of them; that is to say, it withholds the right to sue even in a single instance until the corporation renders itself amenable to suit in all the courts of the State by whosoever chooses to sue it there. If one State can impose such a condition others can, and in that way corporations engaged in interstate commerce can be subjected to great embarrassment and serious hazards in the enforcement of contractual rights directly arising out of and connected with such commerce. As applied to such rights we think the conditions are unreasonable and burdensome, and therefore in conflict with the commerce clause.

These views require that the judgment be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*